IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GH PRIVATE WEALTH MANAGEMENT INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) Case No. _____ |
| v. | )<br>) |
| | ) JURY DEMANDED |
| MORRIS WOODS and MELANIE WOODS, | )<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, GH Private Wealth Management Inc. ("Plaintiff"), by its attorneys, Barnes & Thornburg LLP, for its Complaint against Defendants, Morris Woods ("Defendant Morris Woods") and Melanie Woods ("Defendant Melanie Woods") (collectively, "Defendants"), states as follows:

## NATURE OF THE ACTION

1. This is a civil action for (i) unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)); (ii) common law trademark infringement; and (iii) violations of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510) arising from Defendants' unauthorized use of Plaintiff's GH PRIVATE WEALTH MANAGEMENT mark and branded services in connection with advertising, marketing, promoting, soliciting, and offering unlicensed and infringing services.

2. Plaintiff, a premier private investment management firm, recently discovered that Defendants are falsely representing to the public that they are currently employed by Plaintiff.

3. Defendant Morris Woods has identified himself as Plaintiff's current Vice President.

4. Defendant Melanie Woods has identified herself as Plaintiff's current Tax Director.

5. Defendants have deceived the public by claiming to be employed by Plaintiff, despite the fact that Defendant Morris Woods' employment was terminated for cause in November 2020 and Defendant Melanie Woods has never been employed by Plaintiff.

6. Defendants are also attempting to attach themselves to the unblemished GH PRIVATE WEALTH MANAGEMENT mark and branded services in an effort to cash in on the reputation and goodwill that Plaintiff has been building for the last decade.

7. Defendants' unauthorized use of the GH PRIVATE WEALTH MANAGEMENT mark is likely to cause consumers to confuse Defendants and their services with Plaintiff and its services.

8. Importantly, Defendant Morris Woods has engaged in fraudulent activity both during and after his employment with Plaintiff, while wrongfully adopting Plaintiff's GH PRIVATE WEALTH MANAGEMENT mark.

9. By this lawsuit, Plaintiff seeks preliminary and permanent injunctive relief without bond against Defendants and specifically seeks to enjoin Defendants from further use of its GH PRIVATE WEALTH MANAGEMENT mark and branded services.

10. Injunctive relief is imperative to protect Plaintiff's business and prevent Defendants from causing further damage to Plaintiff's reputation, business prospects, and goodwill.

## THE PARTIES

11. Plaintiff is an Illinois corporation organized under the laws of the State of Illinois with its principal place of business in Chicago, Illinois.

12. On information and belief, Defendant Morris Woods is an individual residing at 2500 Blackstone Avenue, Chicago, Illinois 60637.

13. On information and belief, Defendant Melanie Woods is an individual residing at 2500 Blackstone Avenue, Chicago, Illinois 60637.

## JURISDICTION AND VENUE

14. This action arises under the laws of the United States and the State of Illinois.

15. This action is brought pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); the Illinois Deceptive Trade Practices Act, 815 ILCS 510; and Illinois common law, including trademark infringement and unfair competition.

16. This Court has personal jurisdiction over Defendants in this action at least because Defendants operate infringing LinkedIn and Facebook pages through which Defendants advocate and market their services using the GH PRIVATE WEALTH MANAGEMENT mark throughout the United States, including this judicial district in the State of Illinois. In addition, Defendants' infringing use of the GH PRIVATE WEALTH MANAGEMENT mark has caused harm to Plaintiff in this judicial district in the State of Illinois.

17. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1121. The Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

18. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants are doing business in this judicial district, and a substantial part of the events giving rise to the claims occurred in this district.

**BACKGROUND FACTS**

**I.  Plaintiff's Business And GH PRIVATE WEALTH MANAGEMENT Mark**

19. Mr. Gary Allen Harris is an Investment Advisor Representative and Plaintiff's founder. He also serves as Plaintiff's Chief Executive Officer.

20. Mr. Harris has over 36 years of experience as a wealth and investment manager.

21. Mr. Harris is highly regarded in the investment and wealth management industry. On behalf of Plaintiff, Mr. Harris has given financial talks at the Black Women's Expo and the National Association of Realtors. He has also appeared as a financial correspondent on the Jerry Rose Television Show.

22. Mr. Harris is a licensed insurance broker.

23. Mr. Harris founded Plaintiff in 2014.

24. Plaintiff currently has approximately 200 clients, some of whom have been working with Mr. Harris prior to Plaintiff's founding.

25. Plaintiff provides private wealth management and financial services to clients across the United States.

26. Plaintiff, as a registered investment advisor, is a private, independent, fee-based investment and wealth management firm. Since its inception, Plaintiff's clientele has included business owners, executives, and well-known institutions.

27. Plaintiff has continuously used the GH PRIVATE WEALTH MANAGEMENT mark and branded services for its entire existence.

28. Since 2014, Plaintiff has invested substantial time, money, and other resources promoting the GH PRIVATE WEALTH MANAGEMENT mark and branded services.

29. Plaintiff prominently displays its GH PRIVATE WEALTH MANAGEMENT mark on its website (accessible at https://www.ghpwm.com/home domain name), checklists,

webinars, community education presentations, flyers, videos, and letterhead in connection with its services.

30. Plaintiff is also a licensed life insurance agency that employs insurance agents.

31. These insurance agents have agreements with Plaintiff and sub-contracts with various life insurance companies to sell life insurance.

32. Over the past ten years, Plaintiff has built a substantial client base and brand reputation represented by the GH PRIVATE WEALTH MANAGEMENT mark and branded services and has expended considerable time and energy developing long-term relationships with its clients and business partners.

33. Plaintiff's ability to create these long-lasting relationships is built on trust.

34. Plaintiff is a fiduciary, in the highest sense. Plaintiff's clients not only trust it to manage and grow their financial assets, but to act honestly and in their best interests always.

35. Plaintiff's clients also trust that Plaintiff will protect their personal and financial information by keeping such information confidential.

36. After providing exceptional client services for so many years, Plaintiff has garnered a reputation for excellence.

37. As a result of its exceptional client services and reputation for excellence, the GH PRIVATE WEALTH MANAGEMENT mark and branded services have become recognizable to individuals and insurance and finance industry members as identifying Plaintiff.

38. The GH PRIVATE WEALTH MANAGEMENT mark and branded services have acquired valuable goodwill in these industries.

**II.     Morris And Melanie Woods**

39.     In 2015, Plaintiff hired Defendant Morris Woods as Vice President of Sales; and, he held that position throughout his tenure with Plaintiff.

40.     Defendant Morris Woods also happens to be a cousin of Mr. Harris.

41.     Defendant Melanie Woods is Defendant Morris Woods' wife.

42.     Defendant Melanie Woods has never been employed by Plaintiff.

43.     Defendant Melanie Woods has never had any kind of professional relationship with Mr. Harris or Plaintiff.

44.     While employed as Vice President of Sales, Defendant Morris Woods' primary job duty was to sell insurance on behalf of Plaintiff.

45.     During his employment, Defendant Morris Woods never:  (1) served as a Certified Financial Planner or strategic growth consultant; or (2) worked with any Certified Public Accountant ("CPA") or other tax professional employed by, or affiliated with, Plaintiff.

46.     While employed by Plaintiff, Defendant Morris Woods held a sub-contract with Assurity Life Insurance Company ("Assurity").

47.      The purpose of the Assurity sub-contract was to sell insurance.

48.     Defendant Morris Woods' work for Plaintiff was dependent on maintaining excellent relationships with the life insurance agencies with which Plaintiff partners.

49.     On March 14, 2019, the Illinois Department of Insurance ("IDOI") emailed Defendant Morris Woods to notify him that his insurance contract with Assurity was being terminated for cause.

50. According to IDOI, Assurity informed IDOI that Defendant Morris Woods had submitted a life insurance application that had inaccurate medical information for an individual named Anthony Smith.

51. Assurity reported that Defendant Morris Woods represented he had met with Mr. Smith face-to-face to complete Mr. Smith's life insurance application.

52. Records show, however, that Mr. Smith had actually been admitted to a hospital immediately prior to when Defendant Morris Woods signed and submitted Mr. Smith's life insurance application.

53. Mr. Smith subsequently died in the hospital from the condition for which he was admitted.

54. Nevertheless, Defendant Morris Woods reported that when he met with Mr. Smith, "[Mr. Smith] appeared healthy and active."

55. Defendant Morris Woods also explained that he waited two to three weeks after their initial meeting to submit Mr. Smith's application because Mr. Woods was waiting to receive Mr. Smith's payment information.

56. Mr. Harris later received an email notifying him that Defendant Morris Woods' contract with Assurity was terminated because of the fraudulent insurance application.

57. Upon receiving notice of the Assurity contract termination, Mr. Harris confronted Defendant Morris Woods about Mr. Smith's insurance application and the Assurity contract termination.

58. Based on his years of experience, Mr. Harris concluded that Defendant Morris Woods' explanation was not plausible or satisfactory.

59. As a result, Mr. Harris terminated Defendant Morris Woods for cause in November 2020.

60. In addition to the fraudulent insurance application, Defendant Morris Woods' business production was consistently under quota.

61. Mr. Harris had also learned that Defendant Morris Woods had attempted to use another employee's unique insurance agent number to conduct business fraudulently.

62. These were also factors Mr. Harris considered when Plaintiff terminated Defendant Morris Woods' employment.

63. Upon his termination, Defendant Morris Woods was no longer authorized to conduct business using the GH PRIVATE WEALTH MANAGEMENT mark or branded services.

### III. Defendants' And Their Infringing Conduct

64. In December 2023, Plaintiff learned that Defendant Morris Woods again attempted insurance fraud.

65. Specifically, on or around December 8, 2023, Mr. Harris learned that an unauthorized life insurance policy had been taken out in Mr. Harris' aunt and Defendant Morris Woods' great aunt's name—Ms. Joyce Levy.

66. Ms. Levy realized this while visiting her sister in Markham, Illinois. (Ex. 1, p. 1, ¶¶ 2-5.)

67. On information and belief, Defendants were living with Ms. Levy's sister at the time of this incident.

68. Ms. Levy's sister is Defendant Morris Woods' grandmother.

69. Ms. Levy learned of the unauthorized insurance policy after the insurer, Great Western Insurance Company ("Great Western"), mailed a copy of the policy and a welcome packet that was addressed to Ms. Levy *to Ms. Levy's sister's house*, presumably where Defendants hoped to intercept it before Ms. Levy or her sister learned of its existence.

70. The policy listed Ms. Levy as a Proposed Insured and listed her address as 847 Dartmouth Avenue, Matteson, Illinois 60443. (*Id.* at p. 1, ¶ 5.)

71. The policy listed Ms. Levy's phone number as (312) 315-6689. (*Id.* at p. 6.) On information and belief, this phone number belongs to Defendant Morris Woods.

72. The application also listed Ms. Levy's email address as morriswoods42@gmail.com. (*Id.* at p. 8.) On information and belief, this email address belongs to Defendant Morris Woods.

73. The policy lists Defendant Morris Woods as the Beneficiary and lists his address as 3145 Nottingham Avenue, Markham, Illinois 60428. (*Id.* at p. 9.)

74. Ms. Levy's sister lives at 3145 Nottingham Avenue, Markham, Illinois address. (*Id.* at p. 1, ¶ 5.)

75. The policy was submitted without Ms. Levy's knowledge or consent. (*Id.* at p. 1, ¶¶ 2-5.)

76. Ms. Levy immediately terminated the policy upon discovering it. (*Id.* at p. 1, ¶ 5.)

77. Defendant Morris Woods' repeated history of submitting false applications demonstrates a disregard for the insurance and wealth management industry.

78. After Mr. Harris learned of the fraudulent insurance application, he reported the incident to IDOI, Great Western, and the Cook County State's Attorney. (Ex. 2.)

79. Shortly after learning of the fraudulent insurance application, Plaintiff discovered that Defendant Morris Woods created a LinkedIn profile, which prominently displays the GH PRIVATE WEALTH MANAGEMENT mark and offers GH PRIVATE WEALTH MANAGEMENT branded services.

80. In that profile, Defendant Morris Woods falsely claims to be Plaintiff's current Vice President. (Ex. 3.) His profile represents that he has had this title since March 2015 to the present. (*Id.*)

81. Notably, Defendant Morris Woods' profile states that he has <u>over</u> 500 connections on LinkedIn and has had the profile since March 2015. (*Id.*)

82. Defendant Morris Woods' LinkedIn profile further represents that he is a Certified Financial Planner ("CFP"). (*Id.*)

83. According to the CFP Board, however, Defendant Morris Woods is not a verified CFP.[1]

84. Defendant Morris Woods makes similar representations on his Facebook page. (Ex. 4.)

85. In December 2023, Plaintiff, through Mr. Harris, demanded that Defendant Morris Woods remove the misrepresentations about his employment by or affiliation with GH Private Wealth Management as well as the GH PRIVATE WEALTH MANAGEMENT mark from his LinkedIn profile and Facebook page.

86. To date, Defendant Morris Woods has not complied.

---

[1] The CFP Board's search tool is publicly available at https://www.cfp.net/verify-a-cfp-professional.

87. Plaintiff has also recently learned that Defendant Melanie Woods' LinkedIn profile states that she is employed by Plaintiff as its Tax Director and that she has held that position from 2012 (before Plaintiff existed) through the present. (Ex. 5.)

88. These representations are categorically false.

89. Defendant Melanie Woods' LinkedIn profile also represents that she is a CPA. (*Id.*)

90. That representation also appears to be false, as neither "CPAverify," nor the Illinois Department of Finance and Professional Regulation ("IDFPR") have any record of her certification.[2]

91. Defendants knew of the valuable reputation and goodwill of Plaintiff and its GH PRIVATE WEALTH MANAGEMENT mark and branded services. Defendants are using the service mark to bolster their own reputation and goodwill to acquire new clients.

92. Plaintiff does not have a business relationship or any other professional affiliation with Defendants.

93. Accordingly, Defendants do not have the sponsorship, consent, or approval of Plaintiff to use its GH PRIVATE WEALTH MANAGEMENT mark or branded services.

94. Plaintiff will continue to suffer reputational harm and loss of goodwill if Defendants continue to engage in fraudulent schemes or deliver unsatisfactory services to clients while falsely claiming to be employed by Plaintiff.

## COUNT I

---

[2] CPAverify "is an online central repository of information about licensed CPAs and public accounting firms maintained by the National Association of State Boards of Accountancy (NASBA) to provide a single-search resource covering participating jurisdictions where a person or firm has been licensed. *See* https://cpaverify.org. IDFPR's search tool is available at https://online-dfpr.micropact.com/lookup/ licenselookup.aspx.

## UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING
## (LANHAM ACT, 15 U.S.C. § 1125)
### (Asserted Against All Defendants)

95. Plaintiff restates and incorporates paragraphs 1 through 94 as though fully stated herein.

96. Defendants' conduct complained of herein constitutes federal unfair competition, false designation of origin, and false advertising pursuant to 15 U.S.C. § 1125(a).

97. Defendants' intentional and unlawful use of the GH PRIVATE WEALTH MANGEMENT mark and branded services in interstate commerce is likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval of Defendants by Plaintiff and therefore constitutes false designation of origin and false advertising, in violation of 15 U.S.C. § 1125(a).

98. Defendants' activities as described above constitute the use of false designations of origin in commerce, and false and misleading descriptions and representations of fact, all in violation of 15 U.S.C. § 1125(a).

99. On information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

100. As a direct and proximate result of Defendants' knowing, deliberate, and willful infringement of the GH PRIVATE WEALTH MANAGEMENT mark and branded services, Plaintiff will suffer harm to its business, reputation, and goodwill.

101. As a result of these wrongful acts, Plaintiff is entitled to injunctive relief prohibiting Defendants from using the GH PRIVATE WEALTH MANAGEMENT mark, or any marks confusingly similar thereto, in accordance with 15 U.S.C. § 1116, and to recover all damages that Plaintiff has sustained and will sustain, and all gains, profits, and advantages

obtained by Defendants as a result of their infringing acts in an amount not yet known, as well as the costs of this action, attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(a), and an injunction ordering the destruction of all infringing articles pursuant to 15 U.S.C. § 1118.

## COUNT II
## COMMON LAW TRADEMARK INFRINGEMENT
**(Asserted Against All Defendants)**

102. Plaintiff restates and incorporates paragraphs 1 through 94 as though fully stated herein.

103. Defendants' conduct complained of herein constitutes trademark infringement under the common law of the State of Illinois.

104. Based on its prior and continuous use of its GH PRIVATE WEALTH MANAGEMENT mark and branded services, Plaintiff owns and enjoys common law rights in the State of Illinois and elsewhere in the United States to its GH PRIVATE WEALTH MANAGEMENT mark in connection with its goods and services described herein and similar goods and services.

105. Plaintiff used the GH PRIVATE WEALTH MANAGEMENT mark in connection with its goods and services in the United States, including in the State of Illinois, long before Defendants began using the GH PRIVATE WEALTH MANAGEMENT mark.

106. Defendants' use of the GH PRIVATE WEALTH MANAGEMENT mark without authorization from Plaintiff in connection with their services constitutes an infringement of Plaintiff's common law rights in the GH PRIVATE WEALTH MANAGEMENT mark.

107. Defendants have unfairly competed with Plaintiff by the acts complained of, have done so intentionally, and, unless enjoined by this Court, will cause irreparable harm, damage and injury to Plaintiff, which has no adequate remedy at law.

108. Plaintiff is therefore entitled to injunctive relief, recovery of actual damages, treble damages, costs, and reasonable attorneys' fees.

### COUNT III
### VIOLATION OF THE ILLINOIS
### UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCA 510/1 *et. seq.*)
**(Asserted Against All Defendants)**

109. Plaintiff restates and incorporates paragraphs 1 through 94 as though fully stated herein.

110. By virtue of its common law rights in the GH PRIVATE WEALTH MANAGEMENT mark and branded services, Plaintiff has the exclusive right to use the GH PRIVATE WEALTH MANAGEMENT mark in commerce, throughout the United States, including in Illinois, in connection with its services, and Plaintiff acquired that exclusive right long before the acts of Defendants described herein.

111. With the full knowledge of Plaintiff's GH PRIVATE WEALTH MANAGEMENT mark, Defendants have used the GH PRIVATE WEALTH MANAGEMENT mark in connection with their services to cause a likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of Defendants' services and Plaintiff and between Plaintiff's services and Defendants.

112. Defendants' use of the GH PRIVATE WEALTH MANAGEMENT mark in connection with their services will cause a likelihood of confusion or of misunderstanding as to whether there is an affiliation, connection, or association between Defendants and Plaintiff.

113. Such conduct violates 815 ILCS 510/2(a)(2) and (a)(3).

114. Defendants' deceptive use of the GH PRIVATE WEALTH MANAGEMENT mark has caused and is likely to cause damage to Plaintiff and the goodwill associated with its GH PRIVATE WEALTH MANAGEMENT trademark.

115. Defendants' deceptive use of the GH PRIVATE WEALTH MANAGEMENT mark has been willful and with knowledge of Plaintiff's prior use of and rights in the GH PRIVATE WEALTH MANAGEMENT trademark.

116. As a result of these wrongful acts, Plaintiff is entitled to injunctive relief prohibiting Defendants from using the GH PRIVATE WEALTH MANAGEMENT mark and any confusingly similar marks, and costs and attorneys' fees based on Defendants' intentional conduct, in accordance with Illinois Consumer Protection Act, 815 ILCS 510/3.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter Judgment finding, concluding, and declaring:

A. That Defendants' use of the GH PRIVATE WEALTH MANAGEMENT mark constitutes common law trademark infringement, unfair competition, false designation of origin, and false advertising under 15 U.S.C. § 1125(a), a violation of the Illinois Uniform Deceptive Trade Practices Act, and that Defendant has been unjustly enriched as a result of its infringement;

B. That Defendants and their successors, affiliates, assigns, officers, directors, agents, employees, and attorneys, and all persons or entities in active concert, participation, or privity with any of them, be preliminarily and permanently enjoined, pursuant to 15 U.S.C. §1116 and applicable state laws, from:

1. Using the GH PRIVATE WEALTH MANAGEMENT mark, including all formative variations, or any other names, marks, or slogans in connection with wealth and financial services and related goods and services that are likely to cause confusion, mistake, or deception with respect to Plaintiff's GH PRIVATE WEALTH MANAGEMENT mark;

2. Operating under any domain name or social media accounts containing the GH PRIVATE WEALTH MANAGEMENT mark or confusingly similar marks, including all formative variations, or any other names, marks, or slogans;

3. Doing any other act or thing likely to induce the mistaken belief that Defendants or Defendants' goods and services are in any way affiliated, connected, or associated with Plaintiff or its goods and services, or doing any other act or thing likely to cause confusion with respect to the Plaintiff's GH PRIVATE WEALTH MANAGEMENT mark

C. That Defendants be ordered to notify all customers, donors, vendors, and authorized agents of this Judgment;

D. That Defendants be ordered to close any and all accounts on third party sites where it uses the GH PRIVATE WEALTH MANAGEMENT mark, and be ordered to assist Plaintiff, if needed, in working with third-party sites to remove all content displaying or referencing in any way the GH PRIVATE WEALTH MANAGEMENT mark in relation to Defendants or their services;

E. That, pursuant to 15 U.S.C. § 1116, Defendants be directed to file with this Court and to serve on Plaintiff, within thirty (30) days after entry of the injunction, a report in writing

and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

  F. That Plaintiff be awarded actual compensatory damages and punitive damages, in an amount to be determined at trial;

  G. That Defendants be ordered to pay treble damages pursuant to 15 U.S.C. § 1117 for their knowing, intentional, and willful violations of federal law;

  H. That Plaintiff be awarded all reasonable attorneys' fees, costs and disbursements incurred by it as a result of this action, pursuant to 15 U.S.C. § 1117(a) and the Illinois Deceptive Trade Practices Act 815 ILCS 510;

  I. That Plaintiff be awarded any such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues triable of right by jury.

Dated: April 1, 2024        GH PRIVATE WEALTH MANAGEMENT INC.

                By: */s/ Darrick Hookers*
                  One of Its Attorneys

                Darrick J. Hooker (#6275142)
                Lindsey D. G. Dates (#6281254)
                Christine E. Skoczylas (#6293811)
                Mariah A. Whitner (#6336946)
                BARNES & THORNBURG, LLP
                One North Wacker Drive, Suite 4400
                Chicago, Illinois 60606
                (312) 357-1313